**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| EDWIN CONTRERAS<br>c/o 519 H Street NW<br>Washington, DC 20001<br><br>PEDRO RUBIO<br>c/o 519 H Street NW<br>Washington, DC 20001<br><br>　　　　Plaintiffs,<br><br>v.<br><br>BUSBOYS, INC.<br>d/b/a BUSBOYS AND POETS<br>450 K Street NW<br>Washington, DC 20001<br><br>14TH & V, INC.<br>d/b/a BUSBOYS AND POETS<br>2021 14th Street NW<br>Washington, DC 20009<br><br>BUSBOYS OF MARYLAND, INC.<br>d/b/a BUSBOYS AND POETS<br>5331 Baltimore Avenue, Suite 104<br>Hyattsville, MD 20781<br><br>ANAS SHALLAL<br>a/k/a ANDY SHALLAL<br>1831 Kalorama Road NW<br>Washington, DC 20009<br><br>　　　　Defendants. | **FIRST AMENDED COMPLAINT**[1]<br><br>Case No. 1:20-cv-02154-JEB |

---

[1] This First Amended Complaint is filed "as a matter of course," and without the need for leave of the Court, pursuant to Fed. R. Civ. P. 15.

## FIRST AMENDED COMPLAINT

1.     Defendants own and operate Busboys and Poets, a popular restaurant with multiple branches in the District of Columbia and Maryland. Defendants employed each Plaintiff at two different branches concurrently. Plaintiffs were employed at the following branches: "450K", "14th & V", and "Baltimore Avenue." Across the two branches, Plaintiffs regularly worked sixty hours or more per week. However, Defendants did not pay them overtime wages for their overtime hours.

2.     Plaintiffs bring this action against Busboys, Inc., 14th & V, Inc., Busboys of Maryland, Inc., and Anas Shallal ("Defendants") to recover damages for Defendants' willful failure to pay overtime wages, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*; the District of Columbia Minimum Wage Act Revision Act ("DCMWA"), D.C. Code, § 32-1001 *et seq.*; the District of Columbia Wage Payment and Collection Law ("DCWPCL"), D.C. Code § 32-1301 *et seq.*

### Jurisdiction and Venue

3.     Jurisdiction is proper pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1367 (supplemental jurisdiction).

4.     Venue is proper pursuant to 28 U.S.C. § 1391(b), because all Defendants reside in this district, or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

### Parties

5.     Plaintiff Edwin Contreras is an adult resident of the District of Columbia.

6.     Plaintiff Pedro Rubio is an adult resident of Prince George's County, Maryland.

7.      Defendant Busboys, Inc. is a District of Columbia corporate entity. It does business as Busboys and Poets. Its principal place of business is located at 450 K Street NW, Washington, DC 20001. Its registered agent for service of process is Professional Registered Agents, Inc., 2600 Virginia Avenue NW, Suite 1112, Washington, DC 20037.

8.      Defendant 14th & V, Inc. is a District of Columbia corporate entity. It does business as Busboys and Poets. Its principal place of business is located at 2021 14th Street NW, Washington, DC 20009. Its registered agent for service of process is Professional Registered Agents, Inc., 2600 Virginia Avenue NW, Suite 1112, Washington, DC 20037.

9.      Defendant Busboys of Maryland, Inc. is a Maryland corporate entity. It does business as Busboys and Poets. Its principal place of business is located at 5331 Baltimore Avenue, Suite 104, Hyattsville, MD 20781. Its registered agent for service of process is Leanne M. Schrecengost, 102 W. Pennsylvania Avenue, Suite 600, Towson, MD 21204.

10.     Defendant Anas Shallal is an adult resident of the District of Columbia. He resides at 1831 Kalorama Road NW, Washington, DC 20009. He is an owner and officer of Defendant Busboys, Inc., 14th & V, Inc., and Busboys of Maryland, Inc. He exercises control over the operations of Busboys, Inc., 14th & V, Inc., and Busboys of Maryland, Inc. — including their pay practices.

11.     Under the direction of Defendant Anas Shallal, Defendants operate the Busboys and Poets branches as though they were one business.

12.     At all relevant times, Defendants had multiple employees, including Plaintiffs, working concurrently at two or more Busboys and Poets branches.

13.     At all relevant times, Defendants coordinated the schedules of Plaintiff Contreras and his coworkers so as not to cause a conflict with any staffing needs of "450K" and "14th & V".

14.     At all relevant times, Defendants coordinated the schedules of Plaintiff Rubio and his coworkers so as not to cause a conflict with any staffing needs of "450K", "14th & V", and "Baltimore Avenue".

15.     At all relevant times, Defendants required Plaintiffs to wear the same uniform at all Busboys and Poets branches.

16.     At all relevant times, Defendants purchased food and materials that were distributed between the Busboys and Poets branches where Plaintiffs worked.

17.     At all relevant times, Defendants offered customers the same menu and services at all three branches.

18.     At all relevant times, Defendants did not operate the 450K, 14th & V, and Baltimore Avenue branches as competitors. Rather, Defendants' branches promoted each other and worked together.

19.     Defendants own and operate the restaurants known as Busboys and Poets, including a branch at 450 K Street NW, Washington, DC 20001 ("450K"), a branch at 2021 14th Street NW, Washington, DC 20009 ("14th & V"), and a branch at 5331 Baltimore Avenue, Hyattsville, MD 20781 ("Baltimore Avenue").

**Factual Allegations Specific to Plaintiff Contreras**

20.     Plaintiff Contreras worked at 450K from approximately 2010 through approximately December 21, 2019.

21.     Plaintiff Contreras worked at 14th & V from approximately 2012 through approximately November 30, 2017.

22.     Plaintiff Contreras worked simultaneously at both branches from approximately 2012 through approximately November 30, 2017.

23. At all relevant times, Plaintiff Contreras worked at Busboys and Poets as a kitchen laborer.

24. At all relevant times, Plaintiff Contreras's job duties at Busboys and Poets primarily consisted of preparing and cooking food by manning the grill station, pasta station, and pizza station.

25. Plaintiff Contreras typically and customarily worked a total of approximately sixty-five and a half hours a week.

26. Plaintiff Contreras typically and customarily worked the following schedule at 450K:

|           | **Start Time** | **End Time** | **Break Time** | **Hours Worked** |
|-----------|----------------|--------------|----------------|------------------|
| Monday    | 10:00 a.m.     | 4:00 p.m.    | –              | 6.0              |
| Tuesday   | 10:00 a.m.     | 4:00 p.m.    | –              | 6.0              |
| Wednesday | 10:00 a.m.     | 4:00 p.m.    | –              | 6.0              |
| Thursday  | 10:00 a.m.     | 4:00 p.m.    | –              | 6.0              |
| Friday    | *Off*          |              |                |                  |
| Saturday  | *Off*          |              |                |                  |
| Sunday    | *Off*          |              |                |                  |
|           |                |              |                | **24.0 hours total** |

27. Prior to November 30, 2017, Plaintiff Contreras typically and customarily worked the following schedule at 14th & V:

|           | **Start Time** | **End Time** | **Break Time** | **Hours Worked** |
|-----------|----------------|--------------|----------------|------------------|
| Monday    | *Off*          |              |                |                  |
| Tuesday   | 4:30 p.m.      | 1:00 a.m.    | –              | 8.5              |
| Wednesday | *Off*          |              |                |                  |
| Thursday  | *Off*          |              |                |                  |
| Friday    | 4:00 p.m.      | 2:00 a.m.    | –              | 10.0             |
| Saturday  | 2:00 p.m.      | 2:00 a.m.    | –              | 12.0             |
| Sunday    | 2:00 p.m.      | 1:00 a.m.    | –              | 11.0             |
|           |                |              |                | **41.5 hours total** |

28. At all relevant times, Defendants paid Plaintiff Contreras by the hour.

29. Between January 2012 and November 2017, Plaintiff Contreras was paid between $11.50 and $14.00 per hour.

30. At all relevant times, Defendants paid Plaintiff Contreras by check or direct deposit.

5

31. While Plaintiff Contreras worked concurrently at 450K and 14th & V, he typically and customarily worked more than forty hours per workweek for Defendants.

32. For purposes of calculating overtime, Defendants did not use the aggregate hours Plaintiff Contreras worked between the 450K and 14th & V branches.

33. As a result, Defendants did not pay Plaintiff Contreras overtime wages — or one and one-half times his regular hourly rate for hours worked in excess of forty in a workweek.

34. Defendants owe Plaintiff Contreras approximately $39,000.00 in overtime wages (excluding liquidated damages).

**Factual Allegations Specific to Plaintiff Rubio**

35. Plaintiff Rubio worked at 14th & V from approximately 2007 through approximately February 28, 2020.

36. Plaintiff Rubio worked at 450K from approximately September 6, 2010 through approximately December 31, 2014.

37. Plaintiff Rubio worked at Baltimore Avenue from approximately January 1, 2015 through approximately December 31, 2017.

38. Plaintiff Rubio worked simultaneously at 14th & V and 450K from approximately September 6, 2010 through approximately December 31, 2014.

39. Plaintiff Rubio worked simultaneously at 14th & V and Baltimore Avenue from approximately January 1, 2015 through approximately December 31, 2017.

40. At all relevant times, Plaintiff Rubio worked a majority of his hours in the District of Columbia.

41. At all relevant times, Plaintiff Rubio worked at Busboys and Poets as a kitchen laborer.

42. At all relevant times, Plaintiff Rubio's job duties at Busboys and Poets primarily consisted of preparing and cooking food.

43.     Plaintiff Rubio typically and customarily worked a total of between approximately sixty and sixty-two hours per week.

44.     At all relevant times, Defendants paid Plaintiff Rubio by the hour.

45.     Defendants paid Plaintiff Rubio approximately the following hourly rates:

| Approximate Dates | Hourly Rate |
|---|---|
| Sep. 06, 2010–Dec. 31, 2013 | $11.00 |
| Jan. 01, 2014–Dec. 31, 2015 | $13.00 |
| Jan. 01, 2016–Dec. 31, 2017 | $15.00 |

46.     At all relevant times, Defendants paid Plaintiff Rubio by check.

47.     While Plaintiff Rubio worked concurrently at 14th & V and 450K, he typically and customarily worked more than forty hours per workweek for Defendants.

48.     While Plaintiff Rubio worked concurrently at 14th & V and Baltimore Avenue, he typically and customarily worked more than forty hours per workweek for Defendants.

49.     For purposes of calculating overtime, Defendants did not use the aggregate hours Plaintiff Rubio worked across branches.

50.     As a result, Defendants did not pay Plaintiff Rubio overtime wages — or one and one-half times his regular hourly rate for hours worked in excess of forty in a workweek.

51.     Defendants owe Plaintiff Rubio approximately $50,550.00 in overtime wages (excluding liquidated damages).

## Factual Allegations Common to All Plaintiffs

52.     Defendant Anas Shallal signed Plaintiffs' paychecks.

53.     Defendant Anas Shallal has participated in decision(s) to hire management at the 450K, 14th & V, and Baltimore Avenue branches.

54.     Defendant Anas Shallal has participated in decision(s) to fire management at the 450K, 14th & V, and Baltimore Avenue branches.

55. Defendant Anas Shallal has participated in decision(s) to set hourly wage rates at the 450K, 14th & V, and Baltimore Avenue branches.

56. Defendant Anas Shallal has participated in decision(s) to set hours of operations at the 450K, 14th & V, and Baltimore Avenue branches.

57. Defendant Anas Shallal participated in the decision(s) to allow Plaintiffs to work concurrently at the 450K, 14th & V, and Baltimore Avenue branches.

58. Defendant Anas Shallal receives daily notifications concerning the operations of his 450K, 14th & V, and Baltimore Avenue branches at his email address: andy@busboysandpoets.com.

59. Defendant Anas Shallal sends instructions concerning operations at the 450K, 14th & V, and Baltimore Avenue branches from his email address: andy@busboysandpoets.com.

60. At all relevant times, Defendants had the power to hire and fire Plaintiffs.

61. At all relevant times, Defendants had the power to control Plaintiffs' work schedule.

62. At all relevant times, Defendants had the power to supervise and control Plaintiffs' work.

63. At all relevant times, Defendants had the power to set Plaintiffs' rate and manner of pay.

64. By dividing his business into multiple corporate entities that issued separate paychecks to Plaintiffs, Defendant Anas Shallal created the false impression that Plaintiffs were ineligible for overtime wages when they worked more than 40 hours per week across branches.

65. While Plaintiffs worked concurrently at two of Defendants' branches, they were unaware that the aggregate of the hours that they worked could be used to determine Defendants' obligation to pay overtime wages.

66. Defendants never notified Plaintiffs that the aggregate of the hours they worked at two different branches could be used to determine Defendants' obligation to pay overtime wages.

67. Upon information and belief, Defendants learned about their failure to pay similarly situated employees overtime wages in early 2018. As a result, Defendants changed their busines practices and stopped scheduling employees to work at multiple branches. Despite coming to this realization, Defendants took no steps to notify their employees, including Plaintiffs, that they had improperly withheld overtime wages.

68. Plaintiffs only learned that the aggregate of the hours that they worked for Defendants' multiple branches could be used to determine overtime wages in the weeks prior to filing their claims.

69. At all relevant times, Defendants were aware that they were legally required to pay Plaintiffs one and one-half times their regular hourly rate for all hours worked in excess of forty hours in any one workweek.

70. At all relevant times, Defendants were aware that they were legally required to timely pay Plaintiffs all wages legally due to them.

71. At all relevant times, the annual gross volume of Defendants' business exceeded $500,000.00.

72. At all relevant times, Defendants had two or more employees who handled goods and/or materials that had traveled in or been produced in interstate commerce.

73. At all relevant times, Defendants had employees who handled food products, such as chicken, beef, or vegetables, that had been raised or grown outside of the District of Columbia.

## COUNT I
## FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA

74. Plaintiffs incorporates the foregoing paragraphs as if fully restated herein.

75. Each defendant was an "employer" of Plaintiffs within the meaning of the FLSA. 29 U.S.C. § 203(d).

76. The FLSA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek. 29 U.S.C. § 207(a)(1). This regular hourly rate cannot be lower than the applicable state or local minimum wage. 29 C.F.R. § 778.5.

77. Defendants violated the FLSA by knowingly failing to pay Plaintiffs at least one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one work-week.

78. Defendants' violations of the FLSA were willful.

79. For Defendants' violations of the FLSA, Defendants are liable to Plaintiffs for unpaid overtime wages, an equal amount as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court.

## COUNT II
## FAILURE TO PAY OVERTIME WAGES UNDER THE DCMWA

80. Plaintiffs incorporates the foregoing paragraphs as if fully restated herein.

81. Each defendant was an "employer" of Plaintiffs within the meaning of the DCMWA. D.C. Code § 32-1002(3).

82. The DCMWA requires employers to pay non-exempt employees one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek. D.C. Code § 32-1003(c).

83. Defendants violated the DCMWA by knowingly failing to pay Plaintiffs at least one and one-half times their regular hourly rate for hours worked in excess of forty hours in any one workweek.

84. Defendants' violations of the DCMWA were willful.

85. For Defendants' violations of the DCMWA, Defendants are liable to Plaintiffs for unpaid overtime wages, an amount equal to three times the unpaid overtime wages as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court.

## COUNT III
## FAILURE TO PAY WAGES UNDER THE DCWPCL

86. Plaintiffs incorporates the foregoing paragraphs as if fully restated herein.

87. Each defendant was an "employer" of Plaintiffs within the meaning of the DCWPCL. D.C. Code § 32-1301(1B).

88. The DCWPCL requires employers to pay an employee who is discharged no later than the working day following the discharge. D.C. Code § 32-1303(1).

89. The DCWPCL requires employers to pay an employee who quits or resigns all wages due upon the next regular payday, or within 7 days from the date of quitting or resigning, whichever is earlier. D.C. Code § 32-1303(2).

90. For purposes of the DCWPCL, "wages" include, among other things, regular, minimum, and overtime wages. D.C Code § 32-1301(3).

91. Defendants violated the DCWPCL by knowingly failing to timely pay Plaintiffs all wages due, including overtime wages.

92. Defendants' violations of the DCWPCL were willful.

93. For Defendants' violations of the DCWPCL, Defendants are liable to Plaintiffs for unpaid wages, an amount equal to three times the amount of unpaid wages as liquidated damages, reasonable attorney's fees and expenses, court costs, interest, and any other relief deemed appropriate by the Court. *See Martinez v. Asian 328, LLC*, 220 F. Supp. 3d 117, 123 (D.D.C. 2016)

("[T]he liquidated-damages provision of the DCWPCL awards treble damages as liquidated damages *in addition to* the actual damages in the form of unpaid wages.").

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment against Defendants, jointly and severally, on all counts, in the current total amount of **$368,318.38** and grant the following relief:

    a.    Award Plaintiffs $358,200.00 consisting of the following overlapping elements:

        i.    unpaid overtime wages, plus an equal amount as liquidated damages, pursuant to the FLSA, 29 U.S.C. § 216;

        ii.    unpaid overtime wages, plus three times the amount of unpaid wages as liquidated damages, pursuant to the DCMWA, D.C. Code § 32-1012;

        iii.    unpaid wages, plus three times the amount of unpaid wages as liquidated damages, pursuant to the DCWPCL, D.C. Code §§ 32-1303(4) and 32-1308;

    b.    Award Plaintiffs pre-judgment and post-judgment interest as permitted by law;

    c.    Award Plaintiffs attorney's fees and expenses computed pursuant to the matrix approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and updated to account for the current market hourly rates for attorney's services, pursuant to the DCWPCL, D.C. Code § 32-1308(b)(1) (as of this date, approximately $9,979.00);

    d.    Award Plaintiffs court costs (currently, $139.38); and

    e.    Award any additional relief the Court deems just.

Date: August 25, 2020 			Respectfully submitted,

/s/ Justin Zelikovitz
JUSTIN ZELIKOVITZ, #986001
DCWAGELAW
519 H Street NW
Washington, DC 20001
Phone: (202) 803-6083
Fax: (202) 683-6102
justin@dcwagelaw.com

*Counsel for Plaintiffs*